UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN BRIGGS, SR.,

                Plaintiff,                              Hon. Janet T. Neff

v.                                              Case No. 1:13-CV-228

TROY MILES, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment, (Dkt. #39), and Plaintiff's Motion for Summary Judgment, (Dkt. #48). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part** and Plaintiff's motion be **denied**.

## BACKGROUND

The following allegations are contained in Plaintiff's verified complaint. (Dkt. #1). On March 2, 2010, Plaintiff was instructed to exit his cell so that he could be transported to a different correctional facility. After Plaintiff exited his cell, Deputies Troy Miles and Patty Dekema held Plaintiff's arms while Deputy Howard Amey "rammed" his shoulder into Plaintiff's back while attempting to secure Plaintiff in belly chains. Amey placed the chains "as tight as he could" around Plaintiff's stomach causing Plaintiff to experience breathing difficulty. Deputy Melody Skinner simply watched as Plaintiff was assaulted by Deputy Amey.

Plaintiff subsequently became light-headed and "fell down" at which point Deputy Amey "punched" Plaintiff in the stomach and tried to "yank [him] up off the floor."  Deputy Dan Chandler then happened upon the scene and instructed Deputy Miles to loosen Plaintiff's belly chains.  After Plaintiff's belly chains were loosened, Deputy Amey instructed Plaintiff to resume walking shortly after which Amey "punched [Plaintiff] in the back of the head" causing Plaintiff to "fall forward."  When the pair reached the transport van, Amey "shoved" Plaintiff inside the van.

Several minutes later, Deputies Michael Stadel, Bryan McClain, and Ronald Garrett entered the van.  Deputies McClain and Garrett held Plaintiff while Deputy Stadel "choked [Plaintiff] for several minutes."  While this assault was occurring, Deputies Amey, Chandler, Miles, and Richard Haring simply "stood outside the van and watched" as Plaintiff was assaulted.  With respect to his encounter with Deputy Stadel, Plaintiff was charged with felony resisting and obstructing a police officer.  Plaintiff subsequently entered into a plea agreement pursuant to which he agreed to plead guilty to misdemeanor attempted resisting and obstructing a police officer.

Plaintiff initiated the present action on February 28, 2013, alleging that Deputies Miles, Amey, Dekema, Skinner, Stadel, McClain, Garrett, Chandler, and Haring subjected him to excessive force and/or failed to protect him from the use of excessive force in violation of his Eighth Amendment rights.  Plaintiff further asserts that Defendants committed assault and battery under Michigan law.  Finally, Plaintiff alleges that Defendants violated his right to substantive due process by falsely charging him with resisting and obstructing a police officer.  Plaintiff seeks declaratory and monetary relief.  Defendants now move for summary judgment.  Plaintiff likewise has moved for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

I.        **Inadmissible Evidence**

In support of their motion for summary judgment, Defendants have submitted certain items of evidence including copies of several incident reports allegedly completed by various Defendants regarding the events giving rise to the present action. (Dkt. #40, Exhibits 3-8). As is well recognized, however, "only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Rogers v. Lilly*, 292 Fed. Appx. 423, 428 n.3 (6th Cir., Aug. 22, 2008) (quoting *Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001)); *see also*, Fed. R. Evid. 901(a) ("[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is"). Defendants have failed to properly authenticate the exhibits in question, moreover, such are not self-authenticating. *See* Fed. R. Evid. 902. Thus, the exhibits in question are properly characterized as inadmissible hearsay which the Court may not consider in the context of Defendants' motion for summary judgment. Accordingly, the Court has completely disregarded the aforementioned exhibits.

II.       **Qualified Immunity**

Defendants assert that they are entitled to qualified immunity as to Plaintiff's Eighth Amendment excessive force claims. As discussed below, the Court only partly agrees.

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question whether a defendant enjoys qualified immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 555 U.S. at 232. On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.* The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

*Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202). The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above. Thus, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights). Likewise, if the right in question was not "clearly established" at the time the defendant acted, the defendant is entitled to qualified immunity.

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher*, 398 F.3d at 845 (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of

appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher*, 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202).

Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two analytical steps in sequence, such is no longer mandated. *See Callahan*, 555 U.S. at 236. As the *Callahan* Court stated, "[t]he judges of the district courts. . .should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

A.       Direct use of Excessive Force Claims

1.       Defendant Miles

In his complaint, Plaintiff alleged that Defendant Miles "held [his] arms" while he was assaulted by Deputy Amey. (Dkt. #1 at ¶ 9). At his deposition, however, Plaintiff testified that he was not asserting any claim that Miles, himself, used excessive force. (Dkt. #40, Exhibit 1 at 79). Instead, Plaintiff is only asserting against Defendant Miles the claim that Miles failed to intervene and protect him from the assault by Defendant Stadel that occurred after Plaintiff was placed in the transport van.

Plaintiff's failure to intervene claims are addressed below.  Accordingly, the undersigned recommends that Defendant Miles is entitled to summary judgment as to this claim.

2.      Defendant Dekema

In his complaint, Plaintiff alleged that Defendant Dekema "held [his] arms" while he was assaulted by Deputy Amey.  (Dkt. #1 at ¶ 9).  At his deposition, however, Plaintiff testified that he was not asserting any claim that Dekema, herself, used excessive force.  (Dkt. #40, Exhibit 1 at 78-79). Plaintiff clarified that his only claim against Defendant Dekema is that she failed to intervene and protect him from the assault by Defendant Amey.  (Dkt. #40, Exhibit 1 at 78-79).  Plaintiff's failure to intervene claims are addressed below.  Accordingly, the undersigned recommends that Defendant Dekema is entitled to summary judgment as to this claim.

3.      Defendant Amey

Plaintiff alleges that Defendant Amey engaged in four separate acts which constitute the use of excessive force: (1) Amey "rammed" his shoulder into Plaintiff's back while attempting to secure Plaintiff in belly chains; (2) Plaintiff later fell to the ground after which Amey "punched" Plaintiff in the stomach and tried to "yank [him] up off the floor"; (3) Amey later "punched [Plaintiff] in the back of the head" causing Plaintiff to "fall forward"; and (4) when Plaintiff and Amey reached the transport van, Amey "shoved" Plaintiff inside the van "onto the floor under the van seats."

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  The excessive use of force which results in the unnecessary and wanton infliction of pain violates this provision.  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Claims alleging the excessive use of force have both a subjective and an objective component.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

The objective component of the analysis examines whether the pain or deprivation allegedly suffered by the prisoner was "sufficiently serious" to implicate the Eighth Amendment.  *Id.* To be "sufficiently serious," the prison official's act or omission must deny the prisoner of "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), as defined by contemporary standards of decency.  *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).  Such standards "always are violated" when "prison officials maliciously and sadistically use force to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Otherwise, prison officials could, with impunity, inflict "any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."  *Id.*

The subjective component of the analysis examines whether the prison official's conduct reflected "obduracy and wantonness" or was instead the product of "inadvertence or error in good faith." *Wilson*, 501 U.S. at 299.  In this respect, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Whitley*, 475 U.S. 320-21.  When evaluating whether a prison official's conduct falls short of this standard, the Court must consider the following factors: (1) the need for the application of force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived by the prison official, and (4) any efforts undertaken to temper the severity of the response.  *Hudson*, 503 U.S. at 7.  The absence of injury, while relevant, is not dispositive.  *Id.*

a.      Allegation #1

Plaintiff alleges that Defendant Amey "rammed" his shoulder into his back while attempting to secure him in belly chains.  Defendant Amey has presented evidence, however, that Plaintiff was actively resisting the application of the belly chains.  (Dkt. #40, Exhibit 10).  Specifically, Defendant Dekema asserts in her sworn discovery responses that "Plaintiff became actively and physically resistant during application of the waist chains by trying to push out his stomach and by placing his thumbs in the way of the chains to prevent their proper application."  *Id.*  In his deposition, Plaintiff acknowledged that he actively interfered with the application of the belly chains by attempting "to pull them down" because he was dissatisfied with their placement.  (Dkt. #40, Exhibit 1 at 41-43).

Even if the Court assumes that Defendant Amey's alleged response satisfies the objective prong of the inquiry, Amey is nevertheless entitled to summary judgment because Plaintiff cannot establish that Amey acted with the requisite intent.  Given that Plaintiff was actively resisting the application of the belly chains, Defendant Amey reasonably determined that some level of force was necessary.  Moreover, the force allegedly used was reasonable and proportional to the threat reasonably perceived by Amey.  Accordingly, the undersigned recommends that Defendant Amey is entitled to summary judgment as to Plaintiff's use of excessive force claim stemming from this particular incident.

b.      Allegation #2

Plaintiff next alleges that while he was being escorted to the transport van, he fell to the ground at which point Amey "punched" him in the stomach and tried to "yank [him] up off the floor." Defendant Amey asserts that he is entitled to summary judgment because "Plaintiff's [deposition]

testimony clearly establishes that Deputy Amey did not punch him, but rather, forcefully reached for the waist chains to try to get Plaintiff to stand back up." (Dkt. #40 at 15).

This is a puzzling argument considering that Plaintiff clearly testified that Amey "punched me in the stomach and then grabbed the chain and tried to yank me off the floor." (Dkt. #40, Exhibit 1 at 48-49). This evidence creates a genuine factual dispute as to whether Amey punched Plaintiff in the stomach after he fell down. Moreover, there exists a genuine dispute as to whether Amey's actions constituted "a good faith effort to maintain or restore discipline" or was instead a malicious act undertaken simply to cause harm. This conclusion is bolstered by Plaintiff's deposition testimony that in the midst of this encounter, Defendant Miles stated to Amey, "stop, stop, stop, stop, stop, somebody is coming" and "stop, stop, here comes the sergeant, here comes the sergeant." (Dkt. #40, Exhibit 1 at 49-50). Moreover, no reasonable officer could have believed that if he acted in the manner which the evidence indicates, when interpreted in Plaintiff's favor, that such was lawful. The undersigned recommends, therefore, that Defendant Amey's motion for summary judgment be denied as to Plaintiff's use of excessive force claim stemming from this particular incident.

c.      Allegation #3

Plaintiff next alleges that after returning to his feet and continuing to the transport van, Defendant Amey "punched [him] in the back of the head" causing him to "fall forward." Defendant Amey asserts that he is entitled to relief because "the force alleged does not rise to the level of a constitutional violation, as it is merely *de minimis*. That is, it is an expected and typical use of force for

officers to physical (sic) transport inmates that have actively resisted."[1]  (Dkt. #40 at 15).  Defendant further argues that "any force used was clearly in a good faith effort to maintain security."  (Dkt. #40 at 15).  The Court is not persuaded.

With respect to the objective prong of the analysis, Defendant has not established that his alleged actions constituted a *de minimis* use of force.  While the Court recognizes that *de minimis* applications of force do not implicate the Eighth Amendment, striking a prisoner for no apparent reason, with sufficient force to cause him to "fall forward," creates a genuine factual dispute as to whether the force in question was truly *de minimis*.

Defendant's argument that his actions were somehow justified by Plaintiff's resistance to the application of belly chains, is not persuasive.  The incident regarding the application of the belly chains was a distinct incident that occurred in a different location of the jail at a completely different point in time.  While Defendant was entitled to employ reasonable force to gain Plaintiff's compliance with respect to the application of the belly chains, there is no evidence that Plaintiff was resisting or otherwise failing to comply with directions when he was allegedly struck in the back of the head by Defendant Amey.

Defendant's argument that he only struck Plaintiff after being threatened by Plaintiff is likewise based upon a misinterpretation of Plaintiff's deposition testimony.  Plaintiff testified that Defendant Amey initiated the encounter by making threats.  (Dkt. #40, Exhibit 1 at 52).  Plaintiff responded by informing Amey that "if you put your hands on me, man, you'll pay for it."  (Dkt. #40, Exhibit 1 at 52).  It was at this point, that Amey allegedly struck Plaintiff in the back of the head.  (Dkt.

---

[1] Defendants have not specified to what Plaintiff "actively resisted," but it appears that this is a reference to the incident concerning Defendant Amey's attempts to secure Plaintiff in belly chains, described above.

#40, Exhibit 1 at 52).  The comment by Plaintiff that he would hold Defendant Amey accountable for any improper action taken against him hardly constitutes a security threat and certainly does not justify the application of force alleged.

Regarding the subjective prong of the analysis, there exists a genuine factual dispute as to whether Defendant Amey's actions constituted a good faith effort to maintain security or were simply a malicious act intended to cause harm.  Again, no reasonable officer could have believed that if he acted in the manner which the evidence indicates, when interpreted in Plaintiff's favor, that such was lawful.  The undersigned recommends, therefore, that Defendant Amey's motion for summary judgment be denied as to Plaintiff's use of excessive force claim stemming from this particular incident.

d.      Allegation #4

Finally, Plaintiff alleges that when he and Defendant Amey arrived at the transport van, Amey "shoved" him inside the van.  While perhaps a close call, the Court concludes that this incident constitutes the very sort of *de minimis* force that falls outside the scope of the Eighth Amendment.  While Plaintiff's allegations and testimony indicate a disturbing degree of carelessness on the part of Defendant Amey, such do not rise to the level of a constitutionally cognizable degree of force.  *See, e.g., Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("[a]n inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim").  Moreover, there is no evidence that Defendant "shoved" Plaintiff into the van maliciously or for the purpose of causing harm.  Accordingly, the undersigned recommends that Defendant Amey's motion for summary judgment be granted as to Plaintiff's use of excessive force claim stemming from this particular incident.

4.      Defendant Garrett

As noted above, Plaintiff alleged in his complaint that Deputies McClain and Garrett held Plaintiff while Deputy Stadel "choked [Plaintiff] for several minutes."  Plaintiff also alleged that Defendant Garrett subsequently aimed a taser at him.  At his deposition, however, Plaintiff testified that his claim of excessive force against Defendant Garrett was premised on the allegation that Garrett "held the taser on me physically."  (Dkt. #40, Exhibit 1 at 79-80).  Plaintiff acknowledged that Garrett did not discharge or use the taser against him, but instead merely held it against him.  (Dkt. #40, Exhibit 1 at 80).  While Plaintiff's previous conduct would not have justified Garrett's subsequent use of the taser, under the circumstances the Court discerns nothing toward in Garrett's act of deterrence.  Accordingly, the undersigned recommends that Defendant Garrett's motion for summary judgment be granted as to this particular claim.


5.      Defendant McClain

Plaintiff alleged in his complaint that Deputies McClain and Garrett held Plaintiff while Deputy Stadel "choked [Plaintiff] for several minutes."  Defendant asserts that he is entitled to relief because "the use of additional restraints on an actively resistant prisoner is constitutionally permissible." (Dkt. #40 at 17).  While Plaintiff did allege in his complaint that McClain placed additional restraints on him, he also clearly alleged that McClain held him while Defendant Stadel choked him.  (Dkt. #1 at ¶¶ 19-20).  At his deposition, Plaintiff clarified that his claim against Defendant McClain was based on the allegation that McClain held him while Defendant Stadel choked him.  (Dkt. #40, Exhibit 1 at 79).  Thus, Defendant McClain has completely failed to address the claim against him.  Accordingly, the

undersigned recommends that Defendant McClain's motion for summary judgment be denied as to this claim.

6.      Defendant Stadel

Plaintiff alleges that after being placed in the transport van, Defendant Stadel choked him for "several minutes."   Defendant argues that he is entitled to relief because Plaintiff was "actively resisting" thereby necessitating the use of force "to maintain safety and security."  The Court disagrees.

Defendant has submitted evidence that after being placed in the transport van, Plaintiff became quite disruptive.  In his sworn discovery responses, Defendant Miles asserted that Plaintiff "was kicking and thrashing around in the van. . .kicking the doors and slamming his head into the Plexiglas divider."  (Dkt. #40, Exhibit 11).   In his sworn discovery responses, Defendant Stadel asserted that Plaintiff "was inside the transportation van, which was shaking and rocking due to Plaintiff's actions inside.  It appeared that Plaintiff was kicking inside the van and hitting his head against the interior." (Dkt. #40, Exhibit 12).  Stadel also asserted that during his attempt to gain control of the situation, Plaintiff head-butted him.  (Dkt. #40, Exhibit 12).  However, contrary to Defendant's assertion, Plaintiff did not concede at his deposition that he was causing a disturbance or similar threat.  To the contrary, Plaintiff's testimony presents a much different version of events.

According to Plaintiff, after he was placed in the van, Defendant McClain "was yelling and cursing at Deputy Amey about putting his hands on [Plaintiff]."  (Dkt. #40, Exhibit 1 at 60). Plaintiff conceded that he was "real animated and angry" about being assaulted by Defendant Amey, but Plaintiff did not testify that he was kicking and slamming his head into the plexiglas or acting in the manner Defendants allege.  (Dkt. #40, Exhibit 1 at 60-68).  Rather, Plaintiff testified that McClain

entered the van first and instructed Plaintiff to "give me your feet" which Plaintiff did.  (Dkt. #40, Exhibit 1 at 60-61).  According to Plaintiff, Defendant Stadel, upset that Plaintiff was making comments to Defendant Amey, then entered the van and immediately began choking him.  (Dkt. #40, Exhibit 1 at 60-63).  It was only then that Plaintiff began yelling at Stadel and actively resisting.  (Dkt. #40, Exhibit 1 at 62-73).  Plaintiff denied head-butting Defendant Stadel.  (Dkt. #40, Exhibit 1 at 64).  Plaintiff testified that the only time he struggled or resisted was when Defendant Stadel completely cut off his air supply while choking him.  (Dkt. #40, Exhibit 1 at 64).  Plaintiff also denied that this encounter was prompted by him slamming his head against the plexiglas in the van.  (Dkt. #40, Exhibit 1 at 67-68).  Plaintiff testified that his head struck the plexiglas divider between the driver and passenger compartments, but only after he had been restrained and the van was in motion.  (Dkt. #40, Exhibit 1 at 67-68).  This was well after the incident with Stadel, not prior thereto as Defendant asserts.

In sum, there exist genuine disputes of fact regarding the relevant events.  Interpreting the facts in Plaintiff's favor makes clear that Defendant Stadel is not entitled to qualified immunity.  Interpreted in Plaintiff's favor, a reasonable person could easily conclude that Defendant Stadel reacted to Plaintiff's displeasure with Defendant Amey in an unreasonable manner not intended to maintain or restore order, but rather to inflict punishment on Plaintiff.  Furthermore, no reasonable officer could have believed that if he acted in the manner which the evidence indicates, when interpreted in Plaintiff's favor, that such was lawful.  Accordingly, the undersigned recommends that Defendant Stadel's motion for summary judgment be denied as to this claim.

B.        Failure to Intervene to Prevent the Use of Excessive Force Claims

Plaintiff alleges that Defendants Miles, Amey, Skinner, Chandler, and Haring violated his Eighth Amendment rights by failing to intervene and protect him from assaults perpetrated by Defendants Amey, Stadel, and McClain.  Defendants argue that they are entitled to qualified immunity as to these claims.  Plaintiff's failure to intervene claims concern two separate incidents each of which is examined below.

An officer, who did not actively participate in the events alleged, can nevertheless be held liable for the use of excessive force if he owed the victim a duty of protection against the use of excessive force and failed to satisfy that duty.  *See Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).  To establish that Defendants owed him a duty of care, Plaintiff must demonstrate that Defendants "observed or had reason to know that excessive force would be or was being used" and "had both the opportunity and the means to prevent the harm from occurring."  *Burgess*, 735 F.3d at 475 (quoting *Turner*, 119 F.3d at 429).

1.        Incident involving Defendant Amey

Plaintiff alleges that Defendant Skinner "stood by and watch[ed]" as Defendant Amey employed excessive force while attempting to secure Plaintiff in belly chains.  (Dkt. #1 at ¶ 9).[2]  As discussed above, however, Defendant Amey did not use excessive force when securing Plaintiff in belly chains.  Because Amey did not use excessive force, Skinner cannot be liable for failing to intervene to

---

[2]  At his deposition, Plaintiff testified that Defendant Dekema also failed to intervene in this encounter. (Dkt. #40, Exhibit 1 at 78-79).  Plaintiff makes no such allegation in his complaint, however.  Because Plaintiff's complaint is the operative document with respect to determining the claims asserted in this matter, the Court finds that Plaintiff has failed to assert a failure to intervene claim against Defendant Dekema.  Moreover, even if such a claim were advanced, such is without merit as discussed herein.

protect Plaintiff from the application of excessive force.  Accordingly, the undersigned recommends that Defendant Skinner's motion for summary judgment be granted as to Plaintiff's failure to intervene claim.

> 2.      Incident involving Defendants Stadel and McClain

Plaintiff alleges that Defendants Miles, Amey, Chandler, and Haring "stood outside the van and watched" as Defendants Stadel and McClain subjected him to excessive force.  (Dkt. #1 at ¶ 17). Defendants assert that they are entitled to relief because: (1) the force used by Stadel and McClain was not excessive; (2) Defendants can only be held liable for their own actions; and (3) the incident in the van "happened quickly" and would have appeared to those outside the van "as a struggle by three officers as they attempted to restrain an actively resisting individual."  (Dkt. #40 at 19-20).

First, as previously discussed, there exists a genuine factual dispute as to whether the force employed by Defendants Stadel and McClain was excessive.  Second, as noted above, Defendants can, in fact, be held liable in this circumstance if it is established that they owed Plaintiff a duty to intervene and failed to do so.  Defendants' final argument is, essentially, that they owed no duty to Plaintiff under the circumstances.  The evidence, however, reveals that genuine disputes of fact remain concerning such.

Defendants argue that the incident in the van happened so quickly that they cannot have been expected to intervene.  Defendants are correct that failure to intervene claims fail where the incident in question occurs so rapidly that it is not reasonable to expect a non-participant to intervene and prevent the use of excessive force.  *See, e.g., Murray-Ruhl v. Passinault*, 246 Fed. Appx. 338 (6th Cir., Aug. 29, 2007) (where officer employed excessive force by firing twelve gunshots "in rapid succession," other officer "lacked sufficient time to act to prevent [officer's] use of excessive force"); *Ontha v. Rutherford*

*County*, 222 Fed. Appx. 498, 506 (6th Cir., Mar. 13, 2007) ("courts have been unwilling to impose a duty to intervene where, as here, an entire incident unfolds in a matter of seconds").

The present circumstance, however, is easily distinguishable.  Plaintiff asserts in his verified complaint that Defendant Stadel choked him for "several minutes."  At his deposition, Plaintiff testified that "everything happened too fast."  (Dkt. #40, Exhibit 1 at 65).  Contrary to Defendants' interpretation, Plaintiff's testimony that the events happened quickly does not necessarily lead to the conclusion that the events were of a short duration.  With respect to the duration of the relevant events, Plaintiff testified that he could not determine with certainty their duration.  (Dkt. #40, Exhibit 1 at 65-66).  Thus, Defendants have failed to demonstrate that the events in question were of such short duration as to preclude a duty to protect.

Defendants' argument that the incident in the van appeared to be nothing more than an attempt to retrain an actively resisting prisoner is equally unavailing.  First, as discussed above, there exist genuine factual disputes as to whether Plaintiff was actively resisting prior to being placed in a choke hold by Defendant Stadel.  Second, the Court rejects the implication of Defendants' argument that once a prisoner is deemed to be actively resisting that any manner and level of force is appropriate.  Simply stated, interpreting the evidence in Plaintiff's favor, a reasonable person could conclude that Defendants Miles, Amey, Chandler, and Haring observed Defendants Stadel and McClain employing excessive force, had the opportunity and means to stop such, and failed to do so.  Moreover, no reasonable officer could have believed that if he acted in the manner which the evidence indicates, when interpreted in Plaintiff's favor, that such was lawful.  Accordingly, the undersigned recommends that Defendants Miles, Amey, Chandler, and Haring are not entitled to qualified immunity as to Plaintiff's failure to intervene claims.

III.                    **Fourteenth Amendment Claims**

Plaintiff alleges that "all Defendants" violated his Fourteenth Amendment right to substantive due process by falsely charging him with resisting and obstructing a police officer.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), Heck brought a § 1983 damages action alleging that defendants had conducted an "unlawful, unreasonable, and arbitrary investigation," had destroyed exculpatory evidence, and caused illegally obtained evidence to be introduced at his criminal trial. *Id.* at 478-79. The Supreme Court concluded that Heck's claim was not cognizable. *Id.* at 486-90. Specifically, the Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions who unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87.

Plaintiff was charged with resisting and obstructing and pleaded guilty to attempted resisting and obstructing. (Dkt. #40, Exhibit 2). Plaintiff's due process claim that he was falsely charged with resisting and obstructing would certainly call into question the validity of his conviction for attempted resisting and obstructing. Plaintiff has neither alleged nor demonstrated that this conviction has been reversed or otherwise invalidated or called into question. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's due process claims.

IV.          **State Law Claims**

Plaintiff alleges that all Defendants, either through the application of physical force and/or by failing to prevent such by others, committed the state law tort of assault and battery.  Defendants argue that they are entitled to immunity under the Michigan Governmental Tort Liability Act.  In support of their position that they are entitled to governmental immunity, Defendants rely on *Odom v. Wayne County*, 760 N.W.2d 217 (Mich. 2008).  A review of this decision, however, reveals that Defendants' argument is misplaced.  As the *Odom* court made clear, "there is no immunity where the [government official] does not act honestly and in good faith, but maliciously, or for an improper purpose." *Id.* at 224. Governmental immunity is an affirmative defense regarding which Defendants bear the burden.  *Id.* at 227-28.  As the discussion above indicates, Defendants have not met their burden to demonstrate that they are entitled to immunity.  Accordingly, the undersigned recommends that Defendants' motion for summary judgment as to Plaintiff's state law claims be denied.

V.          **Plaintiff's Motion for Summary Judgment**

Plaintiff has also moved for summary judgment.  In support of his motion, Plaintiff has failed to submit any evidence, but is instead simply relying on the allegations in his verified complaint. While Defendants have not submitted a great deal of admissible evidence, as the discussion herein nevertheless reveals, there exist genuine issues of fact which preclude granting summary judgment for Plaintiff.  Accordingly, the undersigned recommends that Plaintiff's motion for summary judgment be **denied**.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #39), be **granted in part and denied in part**; and <u>Plaintiff's Motion for Summary Judgment</u>, (Dkt. #48), be **denied**.

Specifically, the undersigned recommends that with respect to Plaintiff's claims that he was subjected to the direct use of excessive force: (1) Defendants Miles, Dekema, and Garrett are entitled to summary judgment; (2) Defendants McClain and Stadel are not entitled to summary judgment; and (3) Defendant Amey is entitled to summary judgment concerning Plaintiff's allegations regarding the application of belly chains and being shoved into the transport van, but that Defendant Amey is not entitled to summary judgment regarding Plaintiff's allegations that Amey punched him in the stomach and back of the head.

The undersigned recommends that with respect to Plaintiff's use of excessive force claims based on a failure to intervene that Defendant Skinner is entitled to summary judgment, but that Plaintiff's claims go forward against Defendants Miles, Amey, Chandler, and Haring.  The undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's Fourteenth Amendment Due Process claims.  The undersigned further recommends that Defendants are not entitled to immunity with respect to Plaintiff's state law claims.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  September 15, 2014                        /s/ Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge